

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

JAMES L. MOSS, M.D.

versus

UNUM PROVIDENT GROUP
CORPORATION, ET AL.

CIVIL ACTION NO. 10-0002

JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is the plaintiff's motion to strike a scheduling order on the grounds that his claims are not governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] See Record Document 39. Because the court finds that the plaintiff's claims are governed by ERISA, the plaintiff's motion to strike is **DENIED**.

## I. BACKGROUND[2]

### A. Facts.

Dr. James L. Moss ("Moss") is a urologist who is employed by, and a part

---

[1] See 29 U.S.C. § 1001 et seq.

[2] The facts are primarily drawn from the joint stipulation submitted by the parties. See Record Document 69.

owner of, Regional Urology, L.L.C. ("Regional Urology").[3]  Accord to Moss, his practice consists of "open or major surgery, endoscopy, and clinical practice." Record Document 26 at 1.

Dr. Moss purchased three disability policies with Provident Life and Accident Insurance Company ("Provident") during his previous employment with Urology Associates: (1) Policy Number 541913, with an effective date of November 1, 1982, providing a benefit of $4,600.00 per month; (2) Policy Number 675021, with an effective date of October 1, 1985, and a benefit amount of $5,400.00 per month; and (3) Policy Number 71924, with an effective date of July 1, 1986, and a benefit amount of $12,000.00 per month. Two other Urology Associates physicians and one non-physician employee also purchased disability policies from Provident, which assigned the policies Employer Risk Plan 0023590. Provident provided a 15% discount on the premiums for each policy holder, including Moss. Urology Associates paid the premiums for the Provident policies issued by bank draft from its corporate account.

In 1991, Moss dropped his policies with Provident and purchased a disability

---

[3] Regional Urology was formed by the merger of Moss's previous employer, Urology Associates, a Professional Medical Corporation ("Urology Associates"), with several other entities. To avoid confusion, Moss's practice group is referred to as "Urology Associates."

policy from New York Life Insurance Company ("New York Life").[4] The New York Life policy bore number H60012221 and had an effective date of June 28, 1991, with a monthly benefit of $13,700.00. Moss's personal insurance agent, Tim Fitzgerald ("Fitzgerald"), prepared Moss's New York Life disability policy application.

The preparatory paperwork submitted by Fitzgerald in connection with Moss's purchase of the New York Life policy contained contradictory information. The application stated that Moss's employer was to pay 100% of the premiums, but the "proposal pages" submitted to New York Life state that premiums would be paid by Moss. See Record Document 69 at Exs. A and B. Urology Associates paid the premiums for Moss's policy with New York Life by bank draft, just as it had done for his Provident policies. See id. at Ex. E. However, unlike his policies with Provident, Moss did not receive a discounted premium from New York Life. Moss was the only Urology Associates physician who purchased a disability policy from New York Life. The remaining physicians and other employees continued their policies with Provident.

In 1993, Moss purchased a second disability policy from New York Life. The second New York Life policy bore number H3236853 and had an effective date of

---

[4] According to Moss, he dropped his policies with Provident because he became dissatisfied with how the provider handled his partner's claims.

June 20, 1993, with a monthly benefit of $2,500.00. As with the first New York Life policy, Fitzgerald again prepared Moss's application, which provided the same contradictory information–that the employer would pay 100% of the premiums but also that the premiums would be paid by the "individual." See id. at Exs. F and G. New York Life's records show that Urology Associates paid the premiums for the second New York Life policies by bank draft until October 2000. On October 4, 2000, the New York Life policies were transferred to be administered by Paul Revere, a subsidiary of Unum Group, under a reinsurance agreement. See id. at Ex. E At that time, Moss began making premium payments on the policies through his personal checking account or his personal corporation's account. See id. At that time, Urology Associates ceased making premium payments. Since October 2000, Moss has personally paid the premiums for both of his New York Life policies.

**B.    Procedural History.**

On February 6, 2008, Moss filed a claim for total disability benefits under his New York Life polices, claiming he suffered from severe right shoulder osteoarthritis which resulted in a decline in his range of motion. See Record Document 1 at Ex. A. Along with his claim, Moss submitted several reports from physicians indicating that the osteoarthritis prevented Moss from performing his duties as a urological surgeon. See id.

On June 5, 2009, Unum denied Moss's claim.[5] Subsequently, on December 2, 2009, Moss filed suit against Unum in state court seeking benefits and statutory penalties. See Record Document 1 at Ex. A. Unum removed the case to this court on January 4, 2010. See Record Document 1. Both parties filed Motions for Judgment Based on the Administrative Record. See Record Documents 26 and 30. The parties also filed a Joint Stipulation Of Facts in which they agreed that ERISA governed the plans at issue. See Record Document 23 at 3.

During a status conference held by Magistrate Judge Mark Hornsby on January 26, 2011, plaintiff's counsel stated that plaintiff's claims may not be governed by ERISA and subsequently moved this court to strike the ERISA scheduling order. See Record Documents 38 and 39. On September 7, 2011, this court denied without prejudice Moss's motion for judgment based on the administrative record pending resolution of his motion to strike the ERISA scheduling order. See Record Document 53.

On March 6, 2012, the magistrate judge denied Moss's Motion to Strike without prejudice, finding issues of fact over whether Moss or his employer funded the premiums for the policies at issue. See Record Document 54. Subsequently, an

---

[5] Unum reviewed and evaluated Moss's claim, but the matter was assigned to an adjuster acting for Paul Revere Life Insurance Company as administrator for New York Life.

evidentiary hearing was scheduled to determine whether the claims are governed by ERISA. See Record Document 55. The parties later agreed, however, to forego an evidentiary hearing and for the court to decide the issue on the parties' briefs and joint stipulations. See Record Document 64. The parties having submitted those documents, this court must now decide the threshold issue of whether Moss's disability policies are governed by ERISA. See Record Documents 70-71.

## II. LAW AND ANALYSIS

Unum argues that Moss's New York Life disability policies constitute an employee welfare benefit plan regulated by ERISA. To determine whether a disability policy is an employee welfare benefit plan regulated by ERISA, the court is to consider whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA employee benefit plan – establishment or maintenance by an employer intending to benefit employees. See Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993). Generally, whether a particular plan meets the statutory definition provided by ERISA is a question of fact. See Provident Life & Acc. Ins. Co. v. Sharpless, 364 F.3d 634, 638 (5th Cir. 2004). However, when the facts are undisputed the court may decide the issue as a matter of law. See House v. Am. United Life Ins. Co., 499 F.3d 443, 448-49 (5th Cir. 2007).

## A. ERISA Coverage.

The parties contest each of the three prongs of the Meredith inquiry. Before engaging in the analysis, however, the court must determine whether the Provident and New York Life policies are components of an overall employee welfare benefit plan as Unum urges, or if the New York Life policies should be analyzed separately from the Provident policies. Unum contends that Urology Associates established a plan in the 1980s when it purchased disability policies with Provident for three physicians and one non-physician employee and that Moss was still a participant in Urology Associates' overall employee welfare benefit plan despite having switched his disability coverage to New York Life. Unum cites Bellasario v. Lone Star Life Insurance, 871 F.Supp. 374 (D. Cal. 1994) and Peterson v. American Life & Health Insurance Company, 48 F.3d 404 (9th Cir. 1995) for the proposition that a separate disability policy may be governed by ERISA if it is a component of a larger employee benefit plan which qualifies as an ERISA plan.

The Fifth Circuit rejected Unum's component theory in Robertson v. Alexander Grant & Company, 798 F.2d 868, 871-72 (5th Cir. 1986), where it held that two retirement benefit plans, one of which covered owners of a business and another which covered employees, were two separate plans for ERISA purposes. District courts in this circuit facing similar issues have rejected Unum's component theory

and expressly refused to follow the reasoning of <u>Bellasario</u> and <u>Peterson</u>. The plaintiff in <u>Hampton v. Provident Life & Accident Insurance Company</u>, 1999 WL 1332189, at *1 (E.D. La. Dec. 3, 1999), a co-owner of a business, purchased a disability policy in which he alone was the sole insured. Six years later, the business purchased health insurance for the company's employees and paid 85% of the premiums. Like Unum in this case, the defendant in <u>Hampton</u> asserted that "where the employee benefits are funded by more than one insurance policy, the entire benefit program, including [the plaintiff's] disability policy, is governed by ERISA." <u>Id.</u> The plaintiff conceded that the employees' health insurance plan was governed by ERISA but argued that his disability insurance was a separate plan not governed by a ERISA. <u>See id.</u> at *3.

The court in <u>Hampton</u> refused to follow <u>Bellasario</u> and <u>Peterson</u>. <u>See id.</u> Instead, the court cited the rule developed from the Fifth Circuit in <u>Robertson</u>, and the Eleventh Circuit in <u>Slamen v. Paul Revere Life Insurance</u>, 166 F.3d 1102, 1106 (11th Cir. 1999), that plans covering only owners must be analyzed separately from employee benefit plans unless the two plans are "related." <u>See id.</u> Factors to consider in determining whether plans are related include: (1) whether any employees have received benefits under the policy; and (2) whether the policies were purchased at the same time, from the same insurer and for the same purpose. <u>See id.</u> (citing <u>Slamen,</u>

166 F.3d at 1105-06). Because no employees were insured under the owner's disability policy, the disability policy was purchased at a different time, from a different insurer, and for a different purpose than the employees' health insurance policy, the <u>Hampton</u> court found the two policies were separate plans and not components of an overall welfare benefit plan governed by ERISA. <u>See</u> <u>id.</u>

Applying these principles, Moss's New York Life policies must be analyzed separately from the Provident policies held by the other Urology Associates physicians. First, unlike the Provident policies, no employees were insured under Moss's New York Life policies. Second, the policies were purchased at different times, from different insurers. The New York Life policies were purchased <u>five years</u> after the Provident policies. Third, it was Moss, not Urology Associates, who negotiated the New York Life policies. Fourth, Moss did not receive the same 15% group discount on his premiums on his New York Life policies as he had under the Provident policies. Despite the fact that both the New York Life and Provident plans provide disability coverage, the plans are simply too different to be considered "related." <u>See</u> <u>Robertson</u>, 798 F.2d at 871-72 ("His argument ignores the fact that the plans, however similar, are two separate plans."). Therefore, the court will analyze Moss's New York Life plan separately.

Having resolved this threshold issue, this court can proceed to the <u>Meredith</u>

analysis. The first step is to determine whether a "plan" exists. <u>See</u> <u>Meredith,</u> 980 F.2d at 355. Under Fifth Circuit jurisprudence, a plan exists "if from the surrounding circumstances, a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." <u>See</u> <u>Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.</u>, 904 F.2d 236, 240-41 (5th Cir. 1990) (adopting <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1374 (11th Cir. 1982)(en banc)). A formal document memorializing a plan is not required to establish the existence of an ERISA plan. <u>See</u> <u>id.</u>

Applying the <u>Donovan</u> factors, a reasonable person could readily ascertain the intended benefits and the procedures for receiving benefits by reference to the respective New York Life policies' provisions. <u>See</u> <u>e.g.</u>, Record Document 15 at Ex. 1 at 63. The policies were issued for the stated purpose of insuring Moss against losses in the event he becomes disabled and set out in considerable detail the types of losses covered. Similarly, the source of financing is determinable by reference to his application paperwork, which provides that the employer will pay 100% of the premiums.[6] <u>See</u> Record Document 69 at Ex. A.

Moss argues that a plan does not exist because he is the only beneficiary of the

---

[6] Moss's argument, to the extent he makes one, that the source of funding cannot be ascertained because he paid for his premiums from October 2000-present is addressed in part B, <u>infra</u>.

policies and therefore there is not a "class" of beneficiaries. This argument lacks merit. The Eleventh Circuit went to great lengths to clarify that its use of the term "class" in <u>Donovan</u> does not require the presence of more than one beneficiary. <u>See</u> <u>Williams v. Wright</u>, 927 F.2d 1540, 1545 (11th Cir. 1991). The court in <u>Williams</u> examined ERISA's legislative history, Code of Federal Regulations, and Department of Labor opinion letters in concluding that "a plan covering only a single employee, where all other requirements are met, is covered by ERISA." <u>Id.</u> Like other district courts in this circuit, this court finds sound the reasoning in <u>Williams</u> that a plan exists under ERISA even if it covers only a single employee. <u>See e.g.</u>, <u>Kerans v. Provident Life & Acc. Ins. Co.</u>, 452 F.Supp.2d 665, 675 (N.D. Tex. 2005); <u>Musmeci v. Schwegmann Giant Super Markets</u>, 159 F.Supp.2d 329, 347 n. 20 (E.D. La. 2001). Thus, the fact that Moss was the only beneficiary of the New York Life policies has no bearing on the existence of a plan. Because a reasonable person could ascertain the intended benefits, class of beneficiaries, source of financing and procedures for receiving benefits under the New York Life policies, the court finds that a plan exists under the first prong of <u>Meredith</u>.

The second step in the analysis is to determine whether the plan falls within the Department of Labor's safe-harbor provision. <u>See Meredith</u>, 980 F.2d at 355. The safe-harbor provision provides that an insurance program will not be considered an

ERISA plan if: (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan. See 29 C.F.R. § 2510.3–1(j). The plan must meet all four criteria to be exempt.

The evidence presented by Unum shows that Urology Associates paid 100% of Moss's premiums on the New York Life policies beginning when the policy was originated in 1991 and continuing until October 2000. New York Life's records show that Moss's premiums were paid by Urology Associates during this time by bank draft through "Checkomatic," a direct drafting billing system. See Record Document 69, Ex. E. Moss disputes this fact with his testimony that he intended to repay Urology Associates for the premiums and the testimony of his accountant that such an arrangement is common. However, Moss presents no evidence, such as check stubs or payment receipts, to directly contest the fact that Urology Associates paid the premiums on his New York Life policies from 1991 to 2000. The court finds that Urology Associates did contribute to the New York Life policies by paying 100% of Moss's premiums. Accordingly, the safe-harbor provision does not apply because Moss's employer, Urology Associates, contributed to the plan.[7]

---

[7] Moss's argument that Urology Associates did not contribute to his premiums because he paid for his premiums from October 2000 to the present is addressed in part B, infra.

The third <u>Meredith</u> factor asks whether the plan satisfies the primary elements of an ERISA employee benefit plan; namely, establishment or maintenance by an employer intending to benefit employees. See <u>Meredith</u>, 980 F.2d at 355. The statute defines an employee welfare benefit plan as:

> any plan, fund, or program, which was . . . or is . . . established or maintained by an employer for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death, or unemployment . . . .

29 U.S.C. § 1002(1). A plan must cover at least one employee in order to qualify as an employee welfare benefit plan. See <u>Meredith</u>, 980 F.2d at 357; <u>see also</u> <u>McNeil v. Time Ins. Co.</u>, 205 F.3d 179, 189 (5th Cir. 2000).

Moss contends, in a footnote, that the New York Life policies did not cover any "employees" as required by ERISA because he was a co-owner of the business covered only himself, and co-owners are not considered employees for ERISA purposes. In support, Moss cites <u>Vega v. National Life Insurance Company</u>, 188 F.3d 287 (5th Cir. 1999), which Unum correctly points out has been modified by more recent Supreme Court and Fifth Circuit jurisprudence. See e.g., <u>House</u>, 499 F.3d at 450 n. 5 ("The dissent cites to cases that pre-date <u>Yates</u>, which clarified this two-part inquiry, citing and tracking our own reasoning in [<u>Vega</u>] in determining that a working owner may qualify as a participant in an employee benefit plan covered by

ERISA.").

In Provident Life & Accident Insurance Company v. Sharpless, 364 F.3d 634, 639 (5th Cir. 2004), under similar facts, the Fifth Circuit held that working shareholders of a medical corporation are classified as "employees" under ERISA. The rule that sole owners of a corporation do not qualify as "employees" does not apply to multiple shareholders who wholly own a corporation. See id. (citing Department of Labor Advisory Opinions 76-67 and 99-04A). In Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 15, 124 S.Ct. 1330, 1341–43 (2004), the Supreme Court made clear that a working owner may be an employer and employee simultaneously: "[A] working owner may have a dual status, i.e., he can be an employee entitled to participate in a plan and, at the same time, the employer . . . who established the plan." Applying these principles, the court finds that Moss, as a working owner of Urology Associates, is both an employee entitled to participate in a plan and the employer who established the plan. Accordingly, the New York Life policies meet the third Meredith factor, establishment or maintenance by an employer intending to benefit employees.

The court finds that the New York Life policies meet all three Meredith factors for an employee welfare benefit plan. Therefore, Moss's claims under those policies are governed by ERISA.

### B.     Moss's Payment Of Premiums.

Although citing no authority, Moss repeatedly relies on the fact that he personally paid the premiums on his New York Life policies from October 2000 to the present in support of his position that the policies fall outside the scope of ERISA. Having determined that the New York Life policies constituted an ERISA governed-plan for the years Urology Associates paid the premiums, the issue facing the court is whether Moss's paying of the premiums in October 2000 removes the New York Life policies from the scope of ERISA.

This court is unaware of any authority supporting Moss's position that a plan may escape ERISA's reach simply by changing the payor status from employer to employee. To the contrary, courts addressing the issue have found that more than simply a change in payor status is required to remove a policy from the realm of ERISA. The plaintiff in <u>Alsup v. Unum Provident Corporation</u>, 2009 WL 62660 (W.D. La. Jan. 9, 2009), argued that he converted his disability policy from an ERISA-governed policy to a non-ERISA policy when he began paying premiums from his personal account. Under near identical facts, the court reasoned that because the plaintiff did not obtain a new, separate policy when he took over payment of the premiums, the plan remained governed by ERISA. <u>See id</u>. at *7 (citing <u>Waks v. Empire Blue Cross/Blue Shield</u>, 263 F.3d 872 (9th Cir. 2001) and <u>Mass. Cas. Ins.</u>

Co., v. Reynolds, 113 F.3d 1450 (6th Cir. 1997)). Here, Moss did not obtain new, separate policies when he began paying the premiums for his New York Life policies. "Because the plan as originally established was subject to ERISA, the policies issued under the plan remain subject to ERISA." Alsup, 2009 WL 62660 at *7 (citing Stern v. Provident Life, 295 F.Supp.2d 1321, 1326 (M.D. Fla. 2003)). The court finds the mere fact that Moss assumed payment for the premiums is insufficient to remove the New York Life policies from the realm of ERISA.

### III. CONCLUSION

Based on the foregoing analysis, Moss's motion to strike the ERISA scheduling order is **DENIED**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana this 6th day of March, 2013.

JUDGE TOM STAGG